UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED PARCEL SERVICE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDY T. WILLIAMSON, <br><br> Defendant. | CIVIL ACTION CASE NO. |

**PETITION FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff United Parcel Services, Inc. ("UPS"), by its attorneys, pursuant to Rule 57 of the Federal Rules of Civil Procedure, seeking a judgment by the Court declaring that a release agreement entered into between UPS and Defendant Andy T. Williamson ("Williamson") is binding and enforceable, such that it requires Williamson to dismiss the employment discrimination lawsuit he brought against UPS in the United States District Court for the District of Kansas styled *Andy T. Williamson v. United Parcel Services, Inc, et al.,* U.S. District Court for the District of Kansas, Case No. 2:19-cv-02506-KHV-TJJ ("the Kansas Litigation").

As set forth in more detail below, UPS is seeking a declaratory judgment in this Court as Ordered by The Honorable Kathryn H. Vratil, U.S. District Court

Judge, District of Kansas. (*See* Ex. 1 and 2, *Williamson v. UPS, et al.,* U.S.D.C., District of Kansas, Case No. 2:19-cv-02506-KHV-TJJ, Clerk's Courtroom Minute Entry of 9/27/21 (Doc. 96) and Order (Doc. 97) (directing the parties to seek a determination by a court located in Georgia)). As such, an actual case or controversy exists between the Parties.

## THE PARTIES

1. UPS is a Delaware corporation with its principal place of business located in Atlanta, Georgia.

2. On information and belief, Williamson is an individual currently residing in the State of Missouri, with a mailing address of P.O. Box 25402, Kansas City, Missouri 64119.

## VENUE AND JURISDICTION

3. Venue is proper in this Court, and this Court has personal jurisdiction over Williamson, because Williamson specifically agreed and contracted, in the release agreement at the heart of this Petition, that "the exclusive forum for any action to enforce this Agreement, as well as any action relating to or arising out of this Agreement, shall be the state or federal courts of the State of Georgia. [Williamson] specifically consent[s] to personal jurisdiction and venue in such

courts, even if [Williamson does] not reside in Georgia at the time of any dispute arising out of or involving this Agreement."

4. Diversity jurisdiction exists in this matter pursuant to 28 U.S.C. § 1332 because UPS is a citizen of Georgia and Williamson is a citizen of Missouri, and because the amount in controversy exceeds $75,000.

## FACTS

5. Williamson began working for UPS in 2003.

6. On August 22, 2019, Williamson, proceeding *pro se*, filed an Employment Discrimination Complaint against UPS and two individuals in the Kansas Litigation.

7. On April 13, 2020, Williamson filed an Amended Complaint in the Kansas Litigation.

8. The Amended Complaint in the Kansas Litigation asserted claims under Title VII, the ADA, and FMLA.

9. All the claims in the Amended Complaint in the Kansas Litigation accrued prior to March 24, 2021, and arose out of Williamson's employment with UPS.

10. UPS filed an Answer denying liability under any of the theories and claims alleged in the Complaint and/or Amended Complaint.

11. On January 25, 2021, UPS announced a restructuring plan that resulted in the elimination of a number of jobs, including Williamson's.

12. Also on January 25, 2021, UPS provided Williamson a Restructuring Separation Allowance Plan Separation Agreement ("the RSAP Agreement") for his review and consideration.

13. Also on January 25, 2021, UPS advised Williamson his last day of employment would be February 28, 2021.

14. Initially, under Section 4(i) of the RSAP Agreement, Williamson had until March 15, 2021 to accept the RSAP Agreement.

15. Once signed, Williamson had seven days to revoke his acceptance of the RSAP Agreement.

16. On March 15, 2021, Williamson returned to UPS a signed RSAP Agreement to which he affixed an additional page that he initialed and signed, which stated: (1) he "[did] not [receive] any information on the Older Workers' Benefit Protection Act," and (2) he "[has] a pending lawsuit against UPS for Discrimination, Retaliation, and other legal claims."

17. On March 17, 2021, via e-mail, UPS rejected Williamson's attempt to alter, amend, or change the terms of the RSAP Agreement.

18. In the March 17, 2021 email, UPS made clear that no changes to the RSAP Agreement were permitted if Williamson wanted to accept the RSAP benefit.

19. UPS also provided Williamson with: (1) a "clean" (i.e., unaltered) copy of the RSAP Agreement, (2) the Older Workers' Benefit Protection Act ("OWBPA") information he claimed he did not previously receive, and (3) an additional period of time – i.e., until March 26, 2021 – to accept or decline the RSAP Agreement without revisions.

20. Also on March 17, 2021, UPS sent Williamson a hard copy of: (1) a communication advising that UPS rejected his changes to the RSAP Agreement, (2) a clean RSAP Agreement, and (3) required information under the OWBPA. The hard copy was delivered to Williamson on March 18, 2021.

21. On March 24, 2021, Williamson submitted an executed and unaltered RSAP Agreement to hrscrsap@ups.com, as requested by UPS and prior to the expiration of the additional period of time provided by UPS. (Ex. 3, Executed RSAP Agreement and Ex. 4, E-mail from Williamson to HRSCrasp@ups.com dated 3/24/21 Transmitting Unaltered RSAP Agreement).

22. UPS confirmed receipt and its acceptance of Williamson's signed, unaltered RSAP Agreement on April 6, 2021. (Ex. 5, E-mails between Williamson and UPS on 4/6/21).

23. The RSAP Agreement permitted Williamson to revoke his acceptance within seven days of his acceptance by completing and returning a RSAP Revocation Form "no later than 5 pm, ET on the seventh calendar day after" signing the RSAP Agreement.

24. Williamson did not submit a RSAP Revocation Form to UPS within the seven-day revocation period.

25. Section 6(d) of the RSAP Agreement selects the law of the State of Georgia to govern the RSAP Agreement, and further states that any action relating to or arising out of the RSAP Agreement shall be the state or federal courts of the State of Georgia.

26. Section 1 of the RSAP Agreement is titled "Consideration." That provision provides that UPS would pay Williamson $78,983, less all applicable withholding and taxes, in consideration for Williamson's execution of the RSAP Agreement.

27. The RSAP Agreement constituted a knowing and voluntary release. The money referenced in paragraph 26 was money Williamson was not otherwise entitled to receive. Williamson certainly had plenty of time to consult with an attorney prior to signing the release, and the language of the RSAP Agreement itself was clear and unambiguous.

28. If he declined the RSAP Agreement, Williamson was still entitled to his earned wages (less applicable deductions) through February 28, 2021, and he retained his vested benefits in all applicable qualified retirement and non-qualified plans.

29. Section 3 of the RSAP Agreement is titled "Complete Release of Claims."

30. Section 3(a) of the RSAP Agreement provides: "In exchange for [UPS's] promises contained in this Agreement, [Williamson agrees] to irrevocably and unconditionally release any and all Claims [he] may now have against [UPS] and other parties as set forth in Section 3 (the "Release")."

31. Under the RSAP Agreement, the "Released Parties" includes UPS and its employees.

32. Section 3(c) of the RSAP Agreement makes clear that by signing the contract, Williamson understood and agreed he was "releasing (i.e., giving up) all known and unknown claims, promises, causes of action, or similar rights of any type that [he] may presently have...against any Released Party, except as provided in Section 3(e) [of the RSAP Agreement]." Section 3(c) specifically releases, among other things, any claims Williamson has or might have under the Title VII, the ADA, and the FMLA – i.e., the claims he asserted in the Kansas Litigation.

33. In Section 3(d), Williamson acknowledged that he "[understood] that [he was] releasing Claims that [he] may not know about," and that was his "knowing and voluntary intent" even though he might someday regret having entered the RSAP Agreement.

34. Section 3(e) identifies the limited claims not released by signing the RSAP Agreement. The claims in the Kansas Litigation are not preserved by Section 3(e).

35. Section 3(h), labeled "Promise Not to Litigate Release Claims," provides: "I have not filed or caused to be filed any lawsuit or arbitration with respect to any Claim this Agreement purports to release. Except as expressly set forth [in Section 3(i)] regarding my Protected Rights, I promise never to litigate any Claim that I have released by signing this Agreement and Release..."

36. Section 3(i) acknowledges that the RSAP Agreement does not limit Williamson's ability to file a complaint or share information with "Government Agencies" such as, for example, the Equal Employment Opportunity Commission, National Labor Relations Board, and the Securities and Exchange Commission.

37. By signing the RSAP Agreement, Williamson represented and agreed (among other things) that:

    a. [he] was given at least 45 calendar days to consider this Agreement, and if [he] sign[ed] the Agreement before the end of the 45-day period,

    it [was his] voluntary decision to do so because [he] decided that [he did] not need any additional time to decide whether to sign the Agreement;

b. [he] took advantage of the time [he] was provided, to the extent [he] desired, to consider [the] Agreement before signing it;

c. [he] received at the beginning of the 45-day period information about the group of individuals covered by the RSAP, factors to be eligible for the RSAP, and the time limits applicable to the RSAP, and [he] also received data regarding the ages and job titles of all individuals who are eligible for the RSAP and the ages of all individuals in the same job classification or organizational unit as [Williamson] who [were] not eligible for the RSAP;

d. before signing this Agreement, [he] carefully read the Agreement and each of its provisions, and [he] fully [understood] what the Agreement and each of its provisions mean[t];

e. [he was] entering into this Agreement knowingly and voluntarily;

f. [he understood] that this Agreement require[d] [him] to release any and all claims of age discrimination under the ADEA;

g. [he was] receiving valuable consideration in exchange for [his] execution of this Agreement that [he] would not otherwise be entitled to receive;

h. [UPS...advised him] to consult with an attorney (at [his] own expense) before signing this Agreement;

i. [he understood] that if [he did] not execute and submit this Agreement within 15 days after [his] RSAP Separation Date, it [would] become null and void and [he would] not be entitled to receive [payment];

j. [he understood] that [he could] revoke [his] acceptance of this Agreement within seven (7) calendar days after [signing] the Agreement, in which case [he would] not be entitled to receive

[payment] or any other benefit under the RSAP. To revoke, [he was required to] complete and return the RSAP Revocation Form no later than 5 p.m., ET on the seventh calendar day from the date [he] signed this agreement; and

k. if [his] employment ended before the RSAP Separation Date selected by UPS (except for reason of death or disability), [he would] forfeit benefits provided under the RSAP. If UPS and [Williamson] mutually agree[d] on a different RSAP Separation Date than the one originally established, [he would] not forfeit benefits provided under the RSAP. (RSAP Agreement, Sec. 4).

38. Directly above the signature line for Williamson, the RSAP Agreement includes, in all capital letters, the following statement: READ THIS AGREEMENT CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. THIS AGREEMENT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS AND ITS ARBITRATION-OF-DISPUTES REQUIREMENT WAIVES YOUR RIGHT TO A JURY TRIAL. IF YOU WISH, YOU SHOULD TAKE ADVANTAGE OF THE CONSIDERATION PERIOD AFFORDED BY SECTION 4 AND CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT.

39. On March 5, 2021, in connection with the Kansas Litigation, UPS filed a Motion to Enforce Settlement Agreement, or in the Alternative, for Summary Judgment ("Motion to Enforce").

40. On June 28, 2021, the U.S. District Court for the District of Kansas denied UPS's Motion to Enforce on the grounds that the agreement imposed two conditions on UPS's duty to make a lump sum severance payment to Williamson in the agreed upon amount: (1) Williamson's execution and non-revocation of the RSAP Agreement; and (2) Williamson's continued employment until the separation date set forth in the agreement. The Kansas federal court reasoned that enforcing the settlement would not be proper until such time as UPS tendered the amount it owed Williamson pursuant to the RSAP Agreement to Williamson.

41. As a result of the Kansas federal court's ruling on UPS's Motion to Enforce, UPS set up a direct deposit for Williamson that should have posted on July 9, 2021. However, after the payment was scheduled, UPS learned Williamson had closed the bank account that was set to receive the direct deposit, and he did not have another account. In addition, UPS learned Williamson had moved to a new physical address. After Williamson's former bank rejected the direct deposit, UPS processed a paper check to be delivered to Williamson's new address.

42. UPS paid Williamson the amount owed under the RSAP Agreement via check delivered to Williamson on July 14, 2021. The check delivered to Williamson was for $78,983, less applicable taxes and deductions.

43. After delivering payment to Williamson, UPS twice requested Williamson's agreement to file a Joint Stipulation of Dismissal in the Kansas Litigation. However, Williamson did not respond to either inquiry and/or dismiss the Kansas Litigation.

44. Consequently, on July 28, 2021, UPS filed a Second Motion to Enforce Settlement Agreement ("Second Motion to Enforce") in the Kansas Litigation.

45. On September 27, 2021, the Court held an evidentiary hearing on UPS's Second Motion to Enforce. At the conclusion of the hearing, the Kansas federal court issued an Order staying the Kansas Litigation, and instructing the Parties to seek a determination from a court located in Georgia as to whether the RSAP Agreement was an enforceable settlement agreement.

46. In accordance with the Kansas federal court's instruction, UPS brings the instant action seeking a declaratory judgment that the RSAP Agreement between UPS and Williamson is a binding and enforceable contract that released the claims Williamson brought against UPS in the Kansas Litigation.

## Count I – Declaratory Judgment

47. UPS repeats and realleges the allegations set forth in paragraphs 1-46 and incorporates them herein by reference.

48. The Kansas federal court Ordered the Parties to obtain a determination from a court located in Georgia regarding the enforceability of the RSAP Agreement.

49. The RSAP Agreement is a binding and enforceable contract between UPS and Williamson under Georgia law that Williamson entered knowingly and voluntarily.

50. The release contained in the RSAP Agreement encompasses all of the claims pending in the Kansas Litigation.

51. Pursuant to the RSAP Agreement, Williamson has released the claims he brought against UPS in the Kansas Litigation.

WHEREFORE, UPS prays this Court:

A. To declare that the RSAP Agreement is binding and enforceable under Georgia law that Williamson entered knowingly and voluntarily;

B. To declare that the claims brought by Williamson in the Kansas Litigation are within the scope of the release contained in the RSAP Agreement;

C. To declare there is no viable claim under Georgia law for rescission of the RSAP Agreement;

D.  To award UPS its costs and attorneys' fees incurred in the prosecution of this action; and

E.  For such further relief as the Court deems just and proper.

Dated this 4th day of February, 2022.

        Respectfully submitted,

        */s/ Nathan J. Allen*
        Nathan J. Allen
        Georgia Bar No. 141304
        OGLETREE, DEAKINS, NASH,
          SMOAK & STEWART, P.C.
        One Ninety One Peachtree Tower
        191 Peachtree Street, NE
        Suite 4800
        Atlanta, Georgia 30303
        Tel:  (404) 881-1300
        Fax: (404) 870-1732
        nathan.allen@ogletree.com

        **ATTORNEYS FOR PLAINTIFF**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED PARCEL SERVICE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDY T. WILLIAMSON, <br><br> Defendant. | CIVIL ACTION CASE NO. |

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 4th day of February, 2022, the foregoing **Petition for Declaratory Judgment** was electronically filed with the Clerk of Court using the CM/ECF system, and a copy of same was served via email on the following *Pro Se* Defendant:

> Andy T. Williamson
> P.O. Box 25402
> Kansas City, MO 64119
> (913) 967-9578
> Tlone1974@gmail.com

> */s/ Nathan J. Allen*
> Nathan J. Allen
> Georgia Bar No. 141304